UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**KIMBERLY P.[1]**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,[2]**

    **Defendant.**

Case No. 3:20-cv-227
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kimberly P. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Memorandum in Opposition*, ECF No. 12, *Plaintiff's Reply*, ECF No. 13, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further consideration.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.  PROCEDURAL HISTORY

On December 20, 2016, Plaintiff protectively filed her current application for benefits, alleging that she has been disabled since October 30, 2015.[3] R. 243–44. The application was denied initially and upon reconsideration, R. 138–51, 153–66, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 176–78. Administrative Law Judge ("ALJ") Stuart Adkins held a hearing on December 11, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 91–115. In a decision dated March 7, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the date on which the application was filed through the date of that decision. R. 10–21. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 13, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 15. The matter is now ripe for disposition.

II.  LEGAL STANDARD

A.  Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages in the Certified Administrative Record will be cited as "R. __."

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden

3

shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at  § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R.  § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 48 years old on December 20, 2016, *i.e.,* the date on which the application was filed. R. 20. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 13.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: deformities of the feet, carpal tunnel syndrome, asthma, obesity, personality disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), learning disorder, anxiety, and depression. *Id*. The ALJ also found that Plaintiff's hypertension, hyperlipidemia, and GERD were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work. R. 15. The ALJ also found that Plaintiff had no past relevant work. R. 20.

At step five, the ALJ found that, considering Plaintiff's RFC and vocational profile, there are jobs that exist in significant numbers in the national economy that she could perform, including such jobs as laundry folder, inspector/hand packager, and assembly machine tender. *Id*. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from the application date through the date of the decision. R. 21.

Plaintiff disagrees with the ALJ's findings at step four and specifically argues that the ALJ erred in evaluating the treating source opinion regarding Plaintiff's mental impairments and in

evaluating the medical evidence, particularly as it relates to her carpal tunnel syndrome. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings *Plaintiff's Statement of Errors,* ECF No. 10, PageID# 1100; *Plaintiff's Reply Brief*, ECF No.13, PageID# 1126. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 12.

IV.     **RELEVANT EVIDENCE AND DISCUSSION**

    A.  **Mental Impairments**

Plaintiff first contends that the ALJ erred in rejecting the opinion of Sunita Agarwal, M.D., Plaintiff's treating psychiatrist, who opined that Plaintiff would miss work more than three times per month as a result of her mental impairments. R. Plaintiff's contention is without merit.

Beginning in March 2014, Dr. Agarwal treated Plaintiff for diagnoses of major depression, recurrent and severe, and PTSD. R. 988. Treatment notes almost always reflected that, on clinical examination, Plaintiff was oriented, her recent and remote memory was intact, her thought processes were coherent, her affect was appropriate, and her mood was euthymic. *See, e.g.*, R. 994-95 (March 2014), 688 (May 2014), 682 (August 2014), 679 (October 2014)("Pt reports doing well…states she does not feel depressed…she is sleeping ok"), 675 (February 2015)("She denies feeling depressed"),  669 (June 2015), 666 (September 2015)("Pt states she is doing ok – she can sleep ok; [s]he reports no depression"), 663 (December 2015), 997 (June 2016), 1010 (November 2016), 1007 (January 2017), 1026-27 (July 2017) ("Pt c/o no [s]ide effects to [m]edicines; Pt denies feeling depressed"), 1023–24 (November 2017), 1014 (July

2018). On a few occasions over the four years of treatment, treatment notes reflected findings of depressed or anxious mood. R. 686 (June 2014) (depressed mood following recent death of sister), 672 (April 2015) (depressed mood), 1000 (March 2016) (depressed mood), 1004 (April 2017)(depressed mood, constricted affect), 1019 (March 2018)(anxious mood).

In a mental impairment questionnaire completed in October 2018, R. 988–91, Dr. Agarwal indicated that Plaintiff's signs and symptoms consisted of poor memory, sleep disturbance, mood disturbances, emotional lability, anhedonia, difficulty thinking or concentrating, and generalized persistent anxiety. R. 988–89. The doctor characterized Plaintiff's mood as depressed and stated that Plaintiff's condition worsens "due to constant worrying." R. 989–90. According to Dr. Agarwal, Plaintiff's restrictions of activities of daily living and difficulties in maintaining social functioning were "slight," and her deficiencies of concentration, persistence or pace, and episodes of deterioration or decompensation in work were "moderate." R. 991. Plaintiff's current GAF was rated at 42, R. 988,[4] and her prognosis was characterized as "fair." R. 990. Dr. Agarwal specifically opined that Plaintiff's impairments or treatment would cause her to be absent from work more than three times a month. *Id.*

In April 2017, George O. Schulz, Ph.D., performed a consultative psychological examination of Plaintiff at the request of the state agency. R. 596–606. Plaintiff was cooperative, and her speech was relevant and well organized. R. 602. Her affect was appropriate and congruent and her mood was euthymic. *Id*. However, Plaintiff reported feelings of depression

---

[4] The [Global Assessment of Functioning] GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas.

*Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012).

and anxiety. R. 603. Plaintiff was oriented, her judgment was "sufficient to determine her own life and treatment decisions." R. 604. Dr. Schulz diagnosed unspecified anxiety disorder and unspecified depressive disorder. *Id*. According to Dr. Schultz, Plaintiff is "mentally capable of completing routine or repetitive ADL tasks both at home and in the community or in a job setting," and "is able to mentally respond appropriately to coworkers and supervisors in a work setting." R. 605. However, Plaintiff "is likely to have some difficulty responding appropriately to work pressure." *Id*.

In April 2017, reviewing consultant Kristen Haskins, Psy.D., found that the record documented diagnoses of depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders; Plaintiff had mild limitations in her abilities to understand, remember, or apply information, and to interact with others, and moderate limitations in her abilities to concentrate, persist, or maintain pace and to adapt or manage herself. R. 144. In May 2017, Kathleen Malloy, Ph.D., also reviewed the record on reconsideration and found documentation of depressive, bipolar, and related disorders, anxiety and obsessive-compulsive disorders, personality and impulse-control disorders, and neurodevelopmental disorders. R. 159. However, this state agency reviewing psychologist agreed with Dr. Haskins' assessment that Plaintiff was only mildly or moderately limited in her ability to engage in work-related activities. *Id.*

The ALJ summarized this evidence and found that Dr. Agarwal's opinion was "not entitled to controlling or deferential weight"

> because it [is] not well supported by medically acceptable clinical findings in the record and is inconsistent with other substantial medical evidence of record. Notably, her assessment is inconsistent with her own treatment notes, which show that the claimant's mental health symptoms gradually decreased during her course of treatment. For example, by July 2018, the claimant reported that she was coping with her health problems, and that she was doing "ok," and a mental status exam performed at the time was normal. Only partial weight is given to the assessment of Dr. Agarwal with respect to the claimant's diagnoses and

8

>symptomology. Her opinion that the claimant would miss work three days per month due to her symptoms appears to be based only on the claimant's subjective complaints, and not on any objective findings.

R. 19–20.

Under the regulations in force at the time that Plaintiff filed her current application, the opinion of a treating provider must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). If the ALJ finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating provider's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the ALJ is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating provider's assessment. *See* 20 C.F.R. § 416.927(c)(2), (4). Finally, the Commissioner must provide "good reasons" for discounting the opinion of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

9

This Court concludes that the ALJ's assessment of Dr. Agarwal's opinion complied with the governing regulation and enjoys substantial support in the record. As the ALJ expressly found, the doctor's opinions are contradicted by most of her own treatment notes and are inconsistent with Dr. Schulz's findings on consultative examination and opinions, to which the ALJ accorded "great weight." R. 19. Moreover, because Dr. Agarwal's treatment notes offer no support whatsoever for her opinion that Plaintiff would miss work three days per month, the ALJ did not err in finding that her opinion in that regard "appears to be based only on the claimant's subjective complaints…." R. 20.

### B. Bilateral Carpal Tunnel Syndrome

Plaintiff also complains that, in light of Plaintiff's bilateral carpal tunnel syndrome, the ALJ should have found limitations in the use of Plaintiff's hands. *Plaintiff's Statement of Errors*, ECF No. 10, PageID# 1099.

The ALJ found that Plaintiff had the RFC for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range light work as defined in 20 CFR 416.967(b) subject to the following additional limitations: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; the claimant can stand and/or walk for about 6 hours and sit for about 6 hours in an 8-hour workday; the claimant would be permitted to alternate between sitting and standing every 40 minutes while at the workstation; the claimant can never climb ladders, ropes, and scaffolds; the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; the claimant should avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants; the claimant can perform simple routine tasks, but not at a production rate pace or with strict production standards; the claimant can have occasional interaction with supervisors, co-workers, and the general public; the claimant can tolerate occasional changes to a routine work setting defined as 1-2 changes per week.

R. 15. This RFC omits any limitation in the use of Plaintiff's hands. As noted, Plaintiff argues that her bilateral carpal tunnel syndrome warrants such restrictions.

The record documents that Plaintiff suffered from moderate carpal tunnel syndrome in both wrists. *See* R. 944. She underwent a right carpal tunnel release in April 2018, following which the condition was "much improved," and Plaintiff reported no new problems or complications and that her "[right] hand is doing pretty good." R. 937. Plaintiff testified at the administrative hearing that the surgery on her right hand "went fine," R. 103, and that she can lift 10 to 15 pounds with her right hand, R. 106.

Plaintiff underwent a left carpal tunnel release in October 2018. R. 945–46. Notes from a follow-up appointment two weeks later indicate that the condition was "slightly improved." R. 944. Plaintiff was advised to "limit heavy gripping and squeezing" for the following four weeks. *Id*. At the administrative hearing, held almost two months after that surgery, however, Plaintiff was still wearing a cast and she testified that she was limited in the ability to use her left hand. R. 102. She also testified that another surgery was a possibility. *Id*.

In his decision, the ALJ referred to the April 2018 right carpal tunnel release, R. 16, but made no mention of the October 2018 surgery on the left, or of the residuals of that surgery. The evidence established a continuing impairment that clearly limited Plaintiff's ability to use her left hand. The ALJ's failure to consider that evidence, or to expressly determine whether the RFC should include any resulting limitation of function, requires remand of the action for further consideration of that issue.

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the action for further consideration of Plaintiff's left carpal tunnel syndrome. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  April 13, 2022                                   *s/Norah McCann King*
                                                         NORAH McCANN KING
                                                         UNITED STATES MAGISTRATE JUDGE